UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEITH BUSH and ANTHONY BENNETT,

                    Plaintiffs,

       -v-

GLEN GOORD, et al.,

                    Defendants.

**SUPPLEMENTAL
REPORT AND
RECOMMENDATION**

03-CV-00759(S)(M)

---

      This case was referred to me by Hon. William M. Skretny to hear and report in accordance with 28 U.S.C. 636(b)(1) (Dkt. #118). Before me is defendants' motion for summary judgment (Dkt. #119).   Following oral argument and supplemental briefing, on January 7, 2008 I issued a Report and Recommendation in which I recommended that defendants' motion be granted (Dkt. #135).

      Defendants filed objections to my Report and Recommendation (Dkt. #136).  By Decision and Order dated April 29, 2008 (Dkt. #139), Judge Skretny accepted my recommendation that plaintiffs' *in forma pauperis* applications be granted (Dkt. #139, ¶7), but stated that with respect to the summary judgment motion, "further factual development and discussion is necessary to appropriately weigh the relevant [Turner] factors and reach a supportable legal conclusion." Id. at ¶5.   Therefore, he returned the case to me for further proceedings and the issuance of a Supplemental Report and Recommendation. Id. at ¶7.

The parties thereafter conducted further discovery[1] and filed supplemental submissions.   Oral argument was again held before me on February 13, 2009. Following oral argument, I requested defendants to clarify whether or not plaintiff Bennett lost previously earned good-time credits as a result of his failure to participate in the SOCP, and they did so (Dkt. ##162 and 163).  For the following reasons, I again recommend that defendant's motion for summary judgment (Dkt. #119) be GRANTED.

## DISCUSSION AND ANALYSIS

### A.    Status of Plaintiff Bush

During oral argument on February 13, 2009, I inquired as to the status of plaintiff Bush. Plaintiffs' attorney stated that he would not oppose a motion to dismiss the complaint as to plaintiff Bush, as he is no longer incarcerated. Defendants then orally moved to dismiss the complaint, with prejudice, as to plaintiff Bush, and the motion was unopposed. Accordingly, I recommend that the complaint be dismissed as to plaintiff Bush.

### B.    Does The SOCP's Acknowledgment of Responsibility Requirement Violate Plaintiffs' First Amendment Rights to Free Exercise of Religion?[2]

"Prisoners retain their right to religious freedom even when incarcerated." Ochoa

---

[1]    The parties have conducted the depositions of plaintiff Bennett and defendants Tom Brunette and Jeffrey Weber.  "Th[ese] depositions were the extent of the additional factual discovery conducted by the parties."  Plaintiffs' Response (Dkt. #154), p. 4.

[2]    Because Judge Skretny remanded the case to me for a more complete factual discussion of the Turner factors, I have not expanded upon the other aspects of my initial Report and Recommendation, including whether plaintiffs' claims are subsumed by the class certified in Donhauser v. Goord, 01-CV-1535 (N.D.N.Y.) (settled October 2008).  January 7, 2008 Report and Recommendation (Dkt. #135), pp. 5-6.

v. Connell, 2007 WL 3049889, *6 (N.D.N.Y. 2007).  However, this right must be "balanced against the 'interests of prison officials charged with complex duties arising from administration of the penal system.'"  Id.  Therefore, a prison inmate retains only "'those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system'".  Shakur v. Selsky, 391 F. 3d 106, 113 (2d Cir. 2004).  "'The governing standard is one of reasonableness.'"  Id.

The parties agree that I "must evaluate four factors in making the reasonableness determination: whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a *de minimis* adverse effect on valid penological interests."  Salahuddin v. Goord, 467 F. 3d 263, 274 (2d Cir. 2006) (*citing* Turner v. Safley, 482 U.S. 78, 90-91 (1987)).

Plaintiff Bennett "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."  Salahuddin, supra, 467 F. 3d at 274-75.[3] Plaintiff Bennett has given conflicting accounts for why he did not participate in the SOCP.  For example, in a June 6, 2003 Time Allowance Form he indicated that he "previously refused

---

[3]        This point was not addressed in my initial Report and Recommendation because it was not raised by defendants.  Based upon the newly conducted discovery, defendants now raise this argument (Defendants' Memorandum of Law (Dkt. #151), Point II), and plaintiffs do not challenge defendants' ability to raise this argument at this stage of the case. Plaintiffs' Response (Dkt. #154), pp. 8-11.  Therefore, I will address it.

SOP . . . due to concern over information regarding crime being disseminated to employees - security and other inmates." Declaration of David State, Esq. (Dkt. #149), Ex. B. He also explained during his deposition that "if I give a statement of guilt then this automatically destroys my chances of being exonerated of the case . . . I asked her: what's more important? Me getting the treatment or me giving you a guilty plea?" August 29, 2008 Deposition Transcript of Anthony Bennett (Dkt. #149), Ex. A, p. 17.

However, at other points in his deposition, he indicated that his refusal to participate in the SOCP was because of the admission of guilt requirement, which would require him to violate his Wiccan faith: "When I presented myself before the court . . . and I took an oath that my word is my bond and my bond is my life according to Wiccan. . . . [I]f you violate that, then you forfeit your life in this world and the next." Id. at pp. 29-30; see also p. 28.

Based upon the record before me, I cannot conclude, as a matter of law, that the SOCP's admission of guilt requirement does not substantially burden plaintiff Bennett's sincerely held religious beliefs. Therefore, I will consider each of the four Turner factors:

1.      **"Whether the challenged regulation has a valid, rational connection to a legitimate governmental objective"[4]**

"The first Turner 'factor' is more properly labeled an 'element' because it is not simply a consideration to be weighed but rather an essential requirement." Salahuddin, supra, 467 F.3d at 274 (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 350 (1987). Because "a court

---

[4]      Although plaintiff Bennett does not challenge the first and second Turner factors, I have analyzed them in light of the newly presented evidence, since Judge Skretny remanded the case to me for further factual development and analysis of all of the factors. Judge Skretny's April 25, 2008 Decision and Order (Dkt. #139), ¶¶5-6.

need not weigh each factor equally", this factor has been called the "controlling factor". <u>Mayfield v. Texas Department of Criminal Justice</u>, 529 F. 3d 599, 607 (5th Cir. 2008).

According to Edwin H. Elfeldt, the Guidance and Counseling Coordinator for DOCS, "the primary purpose of the [DOCS'] sex offender counseling program is to reduce the likelihood that convicted sex offenders and other inmates with histories of sexual offending behavior will reoffend, by helping them to gain control of the chain of behaviors that leads to sexual offending." Affidavit Edwin H. Elfeldt (Dkt. #150), ¶3.  "The SOCTP is fully consistent with the standards, guidelines, and best practices in the field, which require participants in counseling to openly and honestly discuss the behavior that resulted in their incarceration and referral to SOCTP, demonstrate acceptance of responsibility for their conduct, and demonstrate an understanding of his or her sexual offending behavior and cycle of abuse.  If an inmate lies or is untruthful, he will not benefit from the treatment." [5]  <u>Id</u>. at ¶7.

Based upon Mr. Elfeldt's uncontested representations, I conclude that there is a rational connection between the SOCP, including its requirement that prisoners take responsibility for their crimes or face the loss of good time credits for non-participation, and DOCS' interest in rehabilitating prisoners. *See* <u>Donhauser v. Goord</u>, 314 F. Supp. 2d, 119, 135 (N.D.N.Y. 2004) ("there does exist a valid, rational connection between the SOCP, along with its requirements, including the threat faced for non-participation, and the State's interest in requiring program participants to divulge their sexual histories as part of the larger interest in rehabilitating prisoners

---

[5]     The SOCP was superseded by the Sex Offender Counseling and Treatment Program ("SOCTP") in November 2007. Affidavit Edwin H. Elfeldt (Dkt. #150), ¶1.  However, at oral argument on February 13 the parties confirmed that the SOCTP also contains an admission of guilt requirement.

for safe return to society"). *See also* <u>Searcy v. Simmons</u>, 299 F. 3d 1220, 1228 (10th Cir. 2002) ("Even were we to assume the admission of responsibility impinges upon Mr. Searcy's right to freely exercise his religious beliefs, we would agree with the district court that the requirement is 'reasonably related' to the [the government's] penological interests.").

2.      **"Whether prisoners have alternative means of exercising the burdened right"**

Plaintiff Bennett is currently serving a sentence as a result of a conviction for a sexual offense in 1984.  At his trial he denied, under oath, that he committed the crime.  Plaintiff Bennett's August 29, 2008 Deposition Transcript (Dkt. #149-2), pp. 28-30. He has been a practicing Wiccan since 1984, and according to him,  "my word is my bond and my bond is my life according to Wiccan . . . .  If you violate that, then you forfeit your life in this world and the next." <u>Id</u>. at p. 30.

Therefore, it  is evident that plaintiff Bennett could not maintain his tenet against recanting his sworn testimony and, at the same time, abide by the SOCP's admission of guilt requirement.  "Though it would not be conclusive, it would be some evidence that the regulations were unreasonable." <u>Overton v. Bazzetta</u>,  539 U.S. 126, 135 (2003).

3.      **"The impact on guards, inmates, and prison resources of accommodating  the right"**

        **and**

4.      **"The existence of alternative means of facilitating exercise of the right that have only a *de minimis* adverse effect on valid penological interests"**

"The third factor and fourth factors are related: whether an accommodation would have a 'significant ripple effect' on the guards, other inmates, and prison resources and whether there is an alternative that fully accommodates the prisoner at *de minimis* cost to valid penological interests. 'This is not a 'least restrictive alternative' test, prison officials do not have to set up and shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint.' . . . But if the inmate can point to an alternative that fully accommodates his rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship test." Schnitzler v. Reisch, 518 F. Supp. 2d 1098, 1118 (D.S.D. 2007).

In remanding the case back to me of further proceedings, Judge Skretny noted that "it is unclear whether Plaintiffs voluntarily want to participate in the SOCP but believe that they cannot do so because of their religious convictions, or whether DOCS requires that the Plaintiffs participate in this particular program or face the loss of good-time credits. This distinction is important on at least the third and fourth Turner factors, particularly because it appears that programs similar to the SOCP exist that do not include the admission of guilt requirement (Plaintiffs, in fact, completed one)." Judge Skretny's April 25, 2008 Decision and Order (Dkt. #139), ¶6.

According to Mr. Elfeldt, "allowing an inmate to complete the SOCTP without accepting responsibility for his behavior would wreak havoc with DOCS's rehabilitation goals. In other words, allowing Bennett to participate in the SOCTP without accepting responsibility for his behavior would give him credit for completion of a program where staff were prevented from exploring his assessed dynamic risks. If treatment staff cannot discuss with a participant his

-7-

individual risks, they cannot assist that participant in the development of tools necessary to self-regulate and to avoid future offensive behavior." Affidavit Edwin H. Elfeldt (Dkt. #150), ¶14. Moreover, DOCS' "treatment staff are not trained to treat an offender who will not discuss his or her offending behavior." Id. Based upon this undisputed testimony, I conclude that accommodating plaintiff Bennett "would undermine the precept of the entire [program], that admission of responsibility and overcoming denial are integral to the rehabilitation of sex offenders." Searcy, supra, 299 F. 3d at 1228.

"The court in Turner . . . expressed concern for situations where an accommodation would have a 'ripple effect' throughout the prison, thereby possibly straining the facility's ability to cope with change." Donhauser, supra, 314 F. Supp. 2d at 136. "Allowing one participant in the program to avoid discussion of his behavior could result in all other inmates doing the same which would prevent the entire group from receiving the benefits of program participation." Affidavit Edwin H. Elfeldt (Dkt. #150), ¶15; see also ¶12 ("if the Department were to permit an offender to attend the SOCTP without engaging in such discussion, it would likely impair the ability of other inmates in the group to benefit from the program. I would expect that other inmates in the group would believe that they were being treated unfairly and this would make it much more difficult for those participants to engage in the very difficult process of discussing their behavior cycle").

Plaintiff Bennett argues that "the existence of other means of rehabilitating inmates was present prior to the current SOCP and those programs did not require an admission of guilt." Plaintiffs' Response (Dkt. 154), p. 14. By "allowing . . . previously acceptable religious based programs [such as this]  as alternatives to the secular SOCP would accommodate those inmates

-8-

with sincerely held religious beliefs that prevent those inmates from violating their sworn oath and relieving them of the threat of eternal punishment." Id.  In 1989 plaintiff Bennett completed an Innovative Therapeutic Program ("ITP").[6]  *See* Plaintiff Bennett's Deposition Transcript (Dkt. #154-2), p. 12; Plaintiffs' Response (Dkt. #126), Ex. A, ITP Manual.  Other than the ITP, plaintiff Bennett concedes that he completed no sex offense counseling program.  Plaintiff Bennett's Deposition Transcript (Dkt. #154-2), pp. 14-15.

However, the ITP is a religious based program, which is not sanctioned by DOCS. *See* Deposition of Thomas Brunette (Dkt. #154-2), p. 78.[7]  Although plaintiff Bennett received a certificate from DOCS for completing the ITP, DOCS "stopped giving out certificates at least 18 years ago . . . . We stopped doing that because the Department started developing their programs that were more staff run, more . . . patented, consistent . . . the sex offender program we now have is the result of years of research". Deposition of Thomas Brunette (Dkt. #154-2), p. 87.

It remains DOCS' responsibility to "assign[] each inmate to a program of treatment that is most likely to be useful in assisting the inmate to refrain from future violations of the law." Affidavit of Edwin H. Elfeldt (Dkt. #150), ¶16.  "The individual inmate's assigned Correction Counselor, evaluates each inmate to identify his or her assessed program needs." Id.

In this case, plaintiff Bennett was assigned to the SOCP.  While he may have completed other non-sanctioned programs, these do not function as substitutes for the SOCP. The goal of the SOCP "is habilitative, and not punitive".  Id. at ¶3.  "The ultimate benefit of

---

[6]     It also appears to be referred as the "Islamic Therapeutic Program".  Deposition of Thomas Brunette (Dkt. #154-2), p. 77.

[7]     In fact, plaintiff Bennett made a similar argument regarding his referral to a DOCS' sanctioned substance abuse treatment and was advised by DOCS that the ITP did not satisfy his substance abuse treatment requirement.  Declaration of David State, Esq. (Dkt. #149), Ex. D.

[SOCP] participation is enhancing the likelihood that the inmate will be able to lead a postsocial, law abiding life upon release from custody." Id. at ¶17.

While plaintiff Bennett may not agree with the necessity to complete the SOCP, "it is not the function of this court to micromanage the New York prison system or to second guess officials, including those regarding programming." Sumpter v. Skiff, 2008 WL 4518996, *12 (N.D.N.Y. 2008).

Alternatively, plaintiff Bennett argues that "the lost of earned good-time-credits and the inability to earn good-time-credits acts as a *de facto* compulsion towards participation." Plaintiffs' Response (Dkt. #154), p. 5. Therefore, "if inmates could refuse to enter the program by making a voluntary and informed decision, and not one based on the fear that they may lose years of good-time-credits thereby extending their term of incarceration substantially, then there would be very little impact on guards, inmates, and prison resources." Id. at p. 14. In response, defendants argue that the SOCP is not mandatory. Defendants' Memorandum of Law (Dkt. #151), Point I; Defendants' Reply Memorandum of Law (Dkt. #155), Point IV.

Although plaintiff Bennett's maximum sentence expires on July 14, 2013, by 2003 he had earned 9 years, 10 months and zero days of good-time credits , which gave him a conditional release date of September 14, 2003. Declaration of David State, Esq. (Dkt. #163), ¶¶3 and 4, Ex. A. Based upon his impending conditional release date, the Time Allowance Committee began reviewing plaintiff Bennett's case in or about June 2003. Id. at ¶4. After reviewing the matter, the Time Allowance Committee recommended that all of plaintiff Bennett's previously earned good-time credits be withheld because he "needs to successfully complete S/O program and reapply to the committee" and "has a very poor disciplinary [*sic*], with

-10-

improvements noted, recently.  Mr. Bennett should continue to work on this aspect of his incarceration." Id. at Ex. A.  This recommendation was adopted by DOCS' Commissioner on July 1, 2003. Id.

In addition to all of plaintiff Bennett's previously earned good-time credits being withheld, the parties agreed at the February 13, 2009 oral argument that he also lost the right to earn good-time credits going forward as a result of his failure to successfully complete the SOCP.

The SOCP Policy and Procedure Manual, effective October 2001 ("SOCP Manual"),  provides that "an offender may chose to refuse participation in the . . . . Program." Affidavit of Edwin H. Elfeldt (Dkt. #150), Ex. A, p. 15.  "As a result, participation in the SOCP is voluntary."  Affidavit of Edwin H. Elfeldt (Dkt. #150), Ex. A, p. ¶¶4 and 16 ("The Department's sex offender programming is and has been a voluntary program").

According to the SOCP Manual, "an offender who refuses the Program should be made aware of the negative impact his/her decision may have on the Earned Eligibility process, NYS Board of Parole decisions, Time Allowance Committee decisions, the Board of Examiners of Sex Offenders assessment, and other DOCS programs he/she may wish to participate in, such as the Family Reunion Program. . . .  An offender who refuses the . . . Program may be given one second and final opportunity to participate, after one year from his/her initial refusal but not within one year of his/her Conditional Release Date or thereafter, unless specified by a Time Allowance Committee that *may withhold the earning of 'good time' until the offender successfully completes the . . . Program.*" Id. (emphasis added).

Good behavior allowances "may be granted for good behavior and efficient and willing performance of duties assigned or progress and achievement in an assigned treatment

-11-

program, and *may be withheld, forfeited or canceled* in whole or in part for bad behavior,

violation of institutional rules or *failure to perform properly in the duties or program assigned*."

N.Y. Correction Law §803(1)(a) (emphasis added).  "Good behavior allowances *are in the nature*

*of a privilege* to be earned by the inmate and no inmate has the right to demand or to require that

any good behavior allowance be granted to him." 7 N.Y.C.R.R. §260.2 (emphasis added). *See*

*also* N.Y. Correction Law §804(3) ("No person shall have the right to demand or require the

allowances authorized by this section."); N.Y. Correction Law §803(4) (same).

      An inmate does not receive the good-time allowance until there is a final order of

the commissioner.  *See* 7 N.Y.C.R.R. §262.1(d).  However, "the grant of the good behavior

allowance *shall be contingent* on the inmate's continued good behavior, efficient and willing

performance of duties assigned, and progress and achievement in an assigned treatment program."

Id. (emphasis added).

      Although there is some contrary authority as to whether the loss of good time

credits makes the SOCP a compulsory program,[8] I believe that it does not. The "granting or

withholding of good time is a discretionary matter subject to the prisoner meeting and maintaining

the requirements for eligibility.  Thus, the inescapable conclusion is that . . . the wholly

discretionary good time allowance scheme does not 'create a legitimate expectancy' of obtaining

an earlier release".  Edwards v. Ladlair, 2008 WL 3156214, *4 (N.D.N.Y. 2008) (habeas petition).

Thus, "the right to a good time allowance is a discretionary privilege".  Id. at *6; *see also* Brooks

---

      [8]    *See* Donhauser, supra, 314 F. Supp. 2d at 134.  ("In light of the severe nature of the loss of good time credits, the automatic imposition of such loss, and the casual connection between the imposition of such loss and plaintiff's invocation of his Fifth Amendment right, the fact that participation in the SOCP was labeled 'recommended' or 'voluntary' is not dispositive of the issue of whether plaintiff truly had a choice in the matter. Such facts precipitate a finding that plaintiff was 'ordered,' not recommended, to participate in the program.").

v. DiFasi, 1997 WL 436750, *4 (W.D.N.Y. 1997) (Elfvin, J.) ("Under New York law and its prison regulations, there is no right to good behavior allowances. . . . 'Good behavior allowances are in the nature of a privilege to be earned by the inmate' and there is no entitlement to them.").

"It is beyond doubt, of course, that respondent would prefer not to choose between losing prison privileges and accepting responsibility for his past crimes.  It is a choice, nonetheless, that does not amount to compulsion, and therefore one [the state] may require respondent to make." McKune v. Lile, 536 U.S. 24, 45 (2002).[9]  Therefore, I conclude that participation in the SOCP is voluntary, not mandatory.

However, even if participation in the SOCP *could* be considered mandatory, based upon my consideration of all of the Turner factors, including the first and "controlling" factor (Mayfield, supra, 529 F.3d at 607), which weighs heavily in favor of defendants, I would find that the admission of guilt requirement is reasonably related to DOCS' penological interests.

Once defendants satisfy "the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct[,] 'the burden remains with the prisoner to show that these articulated concerns were irrational.'" Salahuddin, supra, 467 F.3d at 275.  I

---

[9] In my initial Report and Recommendation I did not reach the question of whether the SOCP infringed on plaintiffs' First Amendment rights because this was not argued by defendants who instead concentrated their arguments on whether the admission of guilt requirement was reasonably related to DOCS' penological interests.  However, because I have now found that the SOCP is not a compulsory program, I also find that plaintiffs' First Amendment claim fails on this basis alone, without reaching the Turner factors:  " Mr. Searcy is free to adhere to his religious proscription against lying.  In doing so, however, he losses certain privileges he would have received had he complied fully with the requirements for the SATP. This does not present an infringement of Mr. Searcy's constitutional right to free exercise of religion. This is especially so because the requirement of admission of responsibility is generally applicable to all inmates in the SATP and is not pointed at any particular religion or religious belief." Searcy, supra, 299 F.3d at 1228.

conclude that defendants have satisfied their burden, whereas plaintiff Bennett has failed to meet his.

Accordingly, I conclude that the SOCP's "acknowledgment of guilt" requirement is reasonably related DOCS' legitimate penological interests, and recommend that plaintiff Bennett's First Amendment claim be dismissed. *See* <u>Schnitzler</u>, <u>supra,</u> 518 F. Supp. 2d at 1104-1107 (holding that a sex offender treatment program, the completion of which was necessary to be eligible for non-discretionary parole, which  required inmates to participate in sexually explicit group discussions did not violate the right to the free exercise of religion under the First Amendment).

**B.      Are Defendants Entitled to Qualified Immunity?**

Even if the  SOCP's acknowledgment of responsibility requirement violates plaintiffs' First Amendment rights to free exercise of religion, defendants argue that they are entitled to qualified immunity.  Defendants' Memorandum of Law (Dkt. #151), Point VI. Plaintiffs argue that this argument should be disregarded as it is not consistent with my order or the order of Judge Skretny, which limited the supplemental briefing to the applicability of the <u>Turner</u> factors.  Plaintiffs' Response (Dkt. #154), Point III.

Qualified immunity was argued by defendants in their initial motion for summary judgment.  *See* Defendants' Memorandum of Law (Dkt. #122), Point VI.  However, because I found that the SOCP did not violate plaintiffs' First Amendment rights, I  concluded in my initial Report and Recommendation that "I need not reach defendants' qualified immunity arguments (Dkt. #122, Point VI)."  Report and Recommendation  (Dkt. #135), 9 n. 7.  Although it was not

addressed in my initial Report and Recommendation, I see no reason not to address it now as an

alternative basis to recommend granting defendants' motion for summary judgment.[10]

"The doctrine of qualified immunity protects government officials 'from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan,

__U.S.__, 2009 WL 128768, *6 (2009). "If the law at that time was not clearly established, an

official could not reasonably be expected to anticipate subsequent legal developments, nor could

he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

As evidenced by the absence of case law on the issue, it is not "clearly"

established, either in the Second Circuit or elsewhere, that the admission of guilt requirement of

the SOCP violates plaintiffs' rights to free exercise of religion.  Other circuits have granted

defendants summary judgment on the basis of qualified immunity for similar First Amendment

challenges to inmate sexual offender treatment programs.  See Hydrick v. Hunter, 500 F.3d 978,

992 (9th Cir. 2007), petition for certiorari filed, 76 USLW 3410 (Jan 17, 2008) ("To the extent

that the claim relies on a First Amendment right not to participate in treatment sessions, the

Defendants have qualified immunity, because the law on this point is not clearly established.");

Aruanno v. Spagnuolo,  292 Fed.Appx. 184, 187, 2008 WL 2746229, *2 (3d Cir. 2008) ("even if

we were to conclude that Aruanno had a right to refrain from disclosing his past sexual history

and we have not so concluded, we could not hold that the right is clearly established under the

---

[10]     Because plaintiffs are not barred from raising objections to the Supplemental Report and
Recommendation, I find that they are not prejudiced by my analysis of this issue herein.  See Judge
Skretny's April 25, 2008 Decision and Order (Dkt. #139), p. 4.

First Amendment [right to refrain from speaking], and that it was one of which defendants should have been aware.").

Plaintiff Bennett concedes that *"this issue currently presented may be of first impression"*. Plaintiffs' Memorandum of Law (Dkt. #126), p. 13 (emphasis added). However, he argues that it is well established that prison conditions do not give rise to a due process violation unless those conditions constitute a "atypical and significant hardship" as set forth in Sandin v. Conner, 515 U.S. 472 (1995). Id. While the plurality in McKune, supra, 536 U.S. at 37-38, applied the atypical and hardship standard to the plaintiff's Fifth Amendment challenge to an inmate sex offender treatment program, plaintiff Bennett is not asserting a due process or self-incrimination challenge to the SOCP's admission of guilt requirement.[11]

Therefore, even if defendants *had* violated plaintiff Bennett's First Amendment rights, I would recommend that defendants' motion for summary judgment be granted to the extent that he seeks an award of damages, based on their entitlement to qualified immunity.[12]

## C.    Defendants' Newly Raised Arguments

Defendants raise additional arguments not previously raised before me, including that plaintiffs' claim is barred by the favorable termination rule of Heck v. Humphrey, 512 U.S.

---

[11]    Moreover, it is questionable whether the plurality's finding that compulsion under the Fifth Amendment should be measured by reference to Sandin's atypical and significant hardship standard (which Justice O'Connor disagreed with in her concurrence) can be considered the holding of the Supreme Court in McKune, supra: "Because Justice O'Connor based her conclusion on the narrower ground that KDOC's policy was not compulsion under the Fifth Amendment, we view her concurrence as the holding of the Court in McKune." Searcy, supra, 299 F.3d at 1225.

[12]    However, the qualified immunity defense would not bar plaintiff Bennett's claim for injunctive relief, since "qualified immunity is not a defense when such relief is sought". African Trade & Information Center, Inc. v. Abromaitis, 294 F. 3d 355, 360 (2d Cir. 2002).

477 (1994) and application of <u>Mt. Healthy City School District Board of Education v. Doyle</u>, 429 U.S. 274 (1977). *See* Defendants' Memorandum of Law, Points IV and V. Plaintiffs object to my consideration of these arguments. Plaintiffs' Response (Dkt. #154), Point III. Because these arguments were not previously raised by defendants in their initial motion or based on the newly conducted discovery, I will disregard them.

**CONCLUSION**

For these reasons, I again recommend that defendants' motion (Dkt. #119) be GRANTED. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Supplemental Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Supplemental Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Supplemental Report and Recommendation in accordance with the above statute, Rule 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g.*, <u>Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.</u>, 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judges refusal to consider the objection.</u>

**SO ORDERED**.

DATED:    February 23, 2009

JEREMIAH J. MCCARTHY
United States Magistrate Judge